### In re ROMADKA BROS. CO.

(District Court, E. D. Wisconsin. July 5, 1913.)

BANKRUPTCY (§ 316*)—CORPORATION—PROVABLE DEBTS—GUARANTY.

Claimant, who was a stockholder in the corporation, bankrupt, sold his interest to the other stockholders, who were his niece and nephews, taking their notes in part payment, secured by a pledge of practically all of the corporate stock. When the last note only remained unpaid, amounting to $30,000, the corporation was in financial difficulty, and it became necessary to obtain money, which it was decided to do by increasing the capital stock. The individual stockholders had also become indebted to it in a considerable amount for overdrafts. In the adjustment of these matters it was deemed necessary to obtain the consent of claimant as pledgee of the stock. and he was present at a stockholders' meeting at which a plan was adopted, with his consent, by which the stockholders conveyed to the corporation a large amount of real estate; the common stock was increased and distributed between them, and an issue of preferred stock authorized to be sold: claimant surrendered the pledged stock and took a new note, signed by the stockholders and guaranteed by the corporation, which was to assume its payment. *Held*, that under the circumstances existing, such guaranty was within the corporate powers, and based on a valid consideration, and that the note was provable against its estate in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 474–477; Dec. Dig. § 316.*]

In the matter of Romadka Bros. Company, bankrupt. On review of order of referee rejecting the claim of the executors of Charles P. Romadka, deceased. Reversed.

This is a proceeding to review the determination by the referee of the issues raised by the trustee's objections to the claim, made by the executors of the estate of Charles P. Romadka, upon a note and the guaranty thereof by the bankrupt corporation, as follows:

"$30,000.00.                                    Milwaukee, Wis. March 17, 1909.

"On or before three (3) years after date, for value received, we jointly and severally promise to pay to the order of Charles P. Romadka, at the office of the Citizens' Trust Company, in Milwaukee, Wisconsin, the sum of thirty thou-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sand dollars ($30,000.00) with interest thereon at the rate of six per cent. per annum, payable semiannually until paid.

"[Signed]  Amelia J. Talmadge.
"Clem. F. Romadka.
"A. J. Romadka.
"C. J. Romadka.
"Francis J. Romadka.

"For value received, we hereby guarantee the payment of the within note at maturity, and the interest thereon at its respective maturity.

"Romadka Brothers Company,
"By Clem. F. Romadka, President.
"A. J. Romadka, Secretary."

The matter will be better understood if considered in the light of the bankrupt company's history, the relations of the shareholders to each other, and the other circumstances attending the execution and delivery of the instruments thus made the basis of the claim.

For many years prior to May 8, 1898, John M., Anthony V., and Charles P., Romandka, brothers, had been copartners in the conducting of a trunk manufacturing business, which from very small beginnings had grown to large proportions and evidently enjoyed great prosperity. Upon the date above noted, a corporation was organized, capitalized at $150,000, shares of $100, each, the right being reserved to increase such capital to $400,000. The object of the organization, which in fact was to purchase the copartnership business, was thereupon consummated, and $359,000 of the capital stock was issued as a consideration for the conveyance of the copartnership business to the corporation. At or about that time the individual shareholders were the three brothers and Clement F. Romadka, the eldest son of Anthony V. Romadka. John M. Romadka died, his interest in the corporation going to the other three named. Then Anthony V. Romadka died and his interest devolved upon Amelia J. Talmadge, Clement F., Anthony J., Charles J., and Francis J., Romadka. Thus the holdings had changed, and were now limited to Charles P. Romadka, one of the original brothers, and the children of Anthony V. Romadka, another brother.

In or about the year 1901 the question was doubtless before the corporation and its shareholders, respecting a change of policy in its conduct, along larger lines. At or about this time Charles P. Romadka, the survivor of the original three brothers, agreed, in response to overtures made to him, to sell his entire holdings in the corporation to his nephews and niece, above named, and who, it will be observed, became the makers of the note in question. They were to pay him $310,000, of which $30,000, approximately, was in cash, securities, approximately, $80,000, and the balance of $200,000 by a series of notes of $25,000 each. After this transfer was concluded, plans were immediately made by the corporation, then in control of the younger generation, to broaden the business; and one of the means of carrying out these plans was the assumption of large responsibilities in the construction of a new and very extensive plant, to which the business was to be and in fact was thereafter moved and carried on.

When Charles P. Romadka sold out his holdings as stated, the notes for $200,000 were secured by deposit with him of practically the entire capital stock of the corporation. The various notes were all met as they became due, excepting the last of the series, which amounted to $25,000. By this time, however, whatever the cause may have been, the corporate business was less profitable; in fact the company had reached a state of financial distress, rendering it necessary in some way to realize funds, or to reorganize its business and to engage new capital. It was apparently resolved to increase the capital stock of the company from $359,000 to $500,000, the stock to be thereafter classified, $100,000 of preferred, $100,000 of common, stock, the latter to be taken by the then holders of the corporate stock in exchange for the old stock, and the preferred was to be offered for sale in the market, the proceeds to meet the needs of the company.

The corporate action which was taken to meet the necessity last above noted is evidenced by records of meetings of shareholders and directors held on

March 17, 1909. Such action is to be considered in the light of the situation as it then existed, briefly this: That the heirs of Anthony V. Romadka (the signers of the note in question) then held the whole of the outstanding capital stock of the corporation; that such stock had been pledged as collateral security to claimant's testate, to secure the $200,000 of notes, of which the note in question was the last, and then remained unpaid, and with interest amounted to approximately $30,000; that the heirs of Anthony V. Romadka, the corporate shareholders, had, through personal accounts with the corporation, overdrawn the amounts which they were entitled to have, either by way of dividend or salaries, in approximately $64,000; that they also had interests in a large amount of real estate which they inherited from Anthony V. Romadka, which, though heavily incumbered, was supposed to have an equity of some considerable value.

From the records of the shareholders' meeting held as stated, the following appears:

(1) The passage of a resolution, increasing the capital stock of the corporation to $500,000, classifying it as hereinbefore indicated, and requiring present shareholders to surrender their shares in lieu of new common stock; a further amendment, increasing the number of directors from three to six.

(2) Provision for subscription to the new common stock by present shareholders, and providing for a surrender of their present holdings in satisfaction of such subscriptions.

(3) A statement by the president that "the heirs of the Anthony V. Romadka estate voluntarily offered to convey certain interests they owned in this and other states, for the purpose of strengthening the assets of the company; that, assuming such action would meet the approval of the stockholders, said heirs have executed a deed for the same; and he thought it advisable that his action in the matter be ratified and approved." A motion was made approving such action, and the lands covered by the deed are described upon the corporate record.

(4) A motion appears to have been made directing that there be credited to the personal accounts of said respective parties (doubtless referring to the A. V. Romadka heirs) the sum of $64,800 as an agreed value for said property, and that after said property was sold, the proceeds over and above the mortgage indebtedness, and the payment of $64,800, should be paid to the grantors aforesaid; it being agreed that the assets of this company were to be merely increased by the credit of $64,800, and all other sums received over and above that amount to be and to belong and to be repaid to such grantors.

(5) The following also appears on this same record: "The president stated that there was a balance of principal unpaid to Uncle Charles P. Romadka amounting, with principal and interest, to about $30,000; that in order to issue this new stock, the preferred and common stock, it is necessary that the present stock held by Uncle Charlie be canceled, and new stock issued to him. The president suggested that if Uncle Charlie was willing, to issue to him at least $100,000 common stock as collateral security, and give to him the note signed by the sons and daughter of the late Anthony V. Romadka, said note to run three years, interest at 6 per cent., payable semiannually, the note to be assumed by this company. Mr. C. P. Romadka, who was present, preferred their note and indorsement. This matter was informally discussed, and, upon motion of Mrs. Talmadge, duly seconded, it was unanimously adopted and agreed that upon the execution of the note for $30,000, due three years after the date of such note, it to be dated either at this time or at such time as the board of directors shall determine, the note to be executed by the said heirs and indorsed by this company by its president and secretary, Mr. C. P. Romadka consenting."

In connection with the foregoing it appears that under date of February 20, 1909, the A. V. Romadka heirs did execute a deed, which was acknowledged February 23, 1909, conveying to the corporation the described individual property, which deed, being recorded, was returned to the office of the bankrupt corporation's attorney, where the meeting referred to was held, and was there received on the day of holding such meeting, to wit, March 17, 1909; that at or about the same time, possibly later, the note in question in this matter, and which bears date on March 17, 1909, was executed.

The referee disallowed the claim, and claimants seek review of his action.

John M. W. Pratt and Cary, Upham & Black, all of Milwaukee, Wis., for claimants.

Miller, Mack & Fairchild, of Milwaukee, Wis., and Richmond, Jackman & Swansen, of Madison, Wis., for trustee.

GEIGER, District Judge (after stating the facts as above). It is clear that for some time prior to March 17, 1909, the financial affairs of the bankrupt corporation were in a condition requiring urgent attention; in fact, it was deemed imperative that some measure be adopted to avert impending disaster. Disregarding, for the moment, their relation to each other, there were certainly taken, to accomplish in some degree the desired object of rehabilitation, these two steps: (1) The increase of the capital stock of the corporation from $359,000 to $500,000, classified and to be issued, as stated; (2) the transfer by the A. V. Romadka heirs to the corporation of the real estate owned by them individually.

These two steps should be considered in connection with the fact that Charles P. Romadka had in his possession as pledgee, to the knowledge of the corporation and of all its shareholders, the entire capital stock, to secure payment of a debt of approximately $30,000, owing by the shareholders to him; that at the meeting of March 17, 1909, although the shares of stock had not been transferred to him on the books of the corporation, his rights as pledgee were fully recognized by the shareholders and by the corporation as such, and it was conclusively assumed that the contemplated step to increase the capital stock could not be taken without his assent; that while the transfer of the real estate is not *expressly* shown to be the primary consideration for the guaranty of the note in question, both steps were in fact taken to accomplish a general plan of refinancing, or rehabilitating the corporation.

It is urged on behalf of the trustee that the corporation's act in guaranteeing the note was beyond its legitimate corporate power; that the obligation rested upon the individual A. V. Romadka heirs, and that the corporation could not, under the guise of furthering the corporate act of increasing its capital stock, in law bind itself to a pecuniary obligation in consideration of enabling it to increase its stock; that, upon the testimony, the transfer of the A. V. Romadka real estate by the heirs was in no way connected with the execution of the guaranty by the corporation, but, on the contrary, that had been agreed upon and consummated before the meeting of March 17, 1909, upon consideration of extinguishing the personal liability of the heirs to the corporation upon their respective overdrawn accounts.

Respecting the first of these contentions, it may be true that steps to be taken by a corporation in accordance with the statute, for the increase of its stock, for effectuating matters pertaining to corporate organization, are not the transactions of corporate business. In other words, a corporation having a right, in obedience to certain statutes, to enlarge or change its organization, cannot be presumed to have the power to do anything but to comply with the statute, as its terms prescribe, and that any bargaining to accomplish such results may justly be said

not to be the transaction of corporate business or the legitimate exercise of corporate powers. But the situation here is to be judged in the light of everything that transpired, and every fact present and acted upon by the corporation, not alone to enable it to increase its capital stock, but to enable it to better its financial condition, must be considered. Now, what was the situation as recognized by the corporation? It was this: The shareholders were possessed of real estate, which we must presume to be of some considerable value. They were indebted to the corporation on their personal accounts. They were also indebted to claimant's testate in the sum of $30,000, as security for which he held the entire capital stock. They desired to strengthen the company financially, first, by transferring their real estate—by which act they would necessarily disable claimant's testate from looking to them for satisfaction of his debt out of such resources—secondly, they desired. to increase the capital stock from $359,000 to $500,000, taking in exchange for their then holdings common stock to the amount of $400,000, and to issue preferred stock for $100,000, the latter involving necessarily the reduction of the stock held by claimant's testate to a position of juniority in its rank as a capital liability; and they assumed this could not be done without his assent, and they necessarily assumed that if the plan were adopted, the stock would then be of greater value because of the increase in the corporate assets.

With respect to the precise consideration prompting the transfer of the real estate to the corporation, there is controversy in the testimony, but it is fairly inferable from the evidence given by the bankrupt's then attorney, as well as by its former treasurer, that it was contemplated that, among other things, the difference between the $359,000 of stock theretofore outstanding and the $400,000 of common stock to be issued, namely, $41,000, should go to the old shareholders as a consideration for such transfer, and as a part of the general plan of reorganization. The records of the corporation are singularly deficient in pointing out the details of the plan and the means of its execution; but this conclusion finds strong support in the testimony referred to, particularly such as is based upon recommendations made by an expert accountant, who pointed out that in this manner the apparent financial strength of the company would be increased, and a better showing could be made through the elimination of the personal accounts, which otherwise appeared to be a doubtful asset.

It may, be noted that, unless it be conceded that the old shareholders were to receive the balance of the $41,000—the excess of common stock to be issued beyond the $359,000 then outstanding—no suggestion is made in the record respecting the disposition otherwise expected to be made of such $41,000. The corporation's attorney, in giving his testimony, supported it by a memorandum showing the allotment to the five shareholders of their respective proportions of this $41,000.

Now, whether, as matter of law, a pledgee could obstruct a plan such as was here proposed need not be determined. It would seem, however, that, the corporation and all its shareholders, having assumed and recognized the existence of such right on his part, and

he having dealt with them in justifiable reliance upon the existence of such right, the corporation at least should not now be heard to say that the result could have been accomplished without consulting him at all. But whatever be right upon this phase of the case, the evidence is susceptible of no other fair inference, except that all of the steps were taken for the consummation of a plan of refinancing, or rehabilitating the business of the corporation; and, after its accomplishment, no one ought to be heard to say that the act of one party participating therein was not taken into consideration by the others in ordering his or their conduct respecting individual rights at that time; and I therefore conclude that the heirs of A. V. Romadka made the transfer pursuant to negotiations which had been under way for a long time, that the resolution increasing the capital stock was likewise passed, and such increase was accomplished as a consummation of what was under discussion for a long time, and that each of such steps was taken, not only upon the supposition, but in consideration that the other would also be accomplished. Therefore the heirs made such transfer in contemplation of the issue of stock of a different character than that which they then held, also in contemplation of the surrender by Charles P. Romadka of the larger portion of his collateral, and the reduction of that which he retained, to a lower rank as a capital liability. The act of the corporation in accepting the transfer of the Romadka heirs; of Charles P. Romadka in giving his assent thereto, making the surrender of his collateral; the agreement through a corporate meeting to assume a liability on the claim then held by him against the shareholders—not only concurred in point of time, but were considerations each for the other to enable the result indicated. Such corporate agreement, no matter in what form it was ultimately executed, was a valid and binding corporate act, based upon sufficient consideration. Although in form a guaranty, in effect the corporation really assumed the personal debt. Viewed in this light, the transaction does not differ from the transfer of property by one to another, in consideration of the payment, by the transferee, of the transferror's debt to a third person.

The order of the referee is reversed, with instructions to allow the claim.